By the Court,
Robertson, Ch. J.
The main subjects of exceptions on the trial in this case were : (1.) Evidence of the value of some goods bought by Warren of the plaintiff before the fire. (2.) The admission of a book of entries of the plaintiff’s purchases in evidence. (3.) The admission of an appraisal (made by Messrs. Douglas and Van Saun) in evidence. (4.) Evidence of the acts of (Messrs. Boyd & Fellows, as) a committee of the underwriters. There are isolated questions excepted to, to be considered afterwards.
I cannot perceive how the value of the Warren purchase could form any basis for estimating the value of the rest of the stock. Articles of clothing, of the kind in question, are not like grains of wheat, so alike, unless they are all made from similar materials, and in a similar way, that a few can be taken as samples of the rest. The questions put to Warren, and excepted to, were, Whether he endeavored to find purchasers ? What was the best offer he got, and for what amount he sold the goods ? Those put to the purchaser, (Doland,) and so excepted to; were What he gave for such goods, and what was the fair cash value of them when he bought them ? Did they bring a fair value at auction ? and To what did the *507 account of sales amount ? These questions plainly referred to the whole quantity sold, and not to separate articles. But if they did not, and had been as to the value of specific articles, they were inadmissible. The goods so purchased consisted of one hundred and seventy-six coats, twenty-one overcoats, ninety-three pairs of pantaloons and forty-nine vests, and were taken in exchange for a house, valued at $2000. Mr. Douglas, the person employed by Warren to select them, says he took them by their selling marks, which generally were at a large profit, and selected them for the western market, as directed by Warren. Indeed, he took all the fine cloth coats and pantaloons he could find, some being frockcoats, and generally selected the most saleable articles. Doland said there were some fine overcoats among them. Upon looking over the schedules of goods remaining unconsumed, I cannot perceive how goods so purchased and selected, could be samples of the stock, or aid in determining its value, any more than some part of a house could fix what it was worth. There was no evidence that the goods were the same in any particular, or on the average, and I think the evidence was properly excluded.
In regard to the admission of the book of entries of the plaintiff's purchases. The plaintiff's father, (W. A. De-Groot,) upon cross-examination, testified to the accuracy of the entries in such book, as copied from a blotter, entries in which he compared with the original bills as they were paid ; that he had handed the original bills to Messrs. Boyd and Fellows, who acted for the insurance companies, who never returned them ; and that he knew of the accuracy of the amount paid, entered in such book, by paying out a portion himself, seeing the other portion paid by others, making entries of all he paid, or seeing the plaintiff make them, and comparing the entries with those in workmen’s books of cash paid, and a cash book of cash on hand, which was counted. He further stated, on such cross-examination, that he knew the account of purchases, as stated in that book, was correct, and that the money was paid there as charged. The counsel for the de-- ■ fendants first objected to 'the admission of such book or entries *508 in evidence, because it was secondary and not original entries, and subsequently excepted to its admission. There does not seem to have been any objection taken, upon the ground that no proof had been offered of any excuse for non-production of the original; nor did such book purport to be copies of any bills. The plaintiff’s father merely used the bills of purchases as memoranda to guide him in making entries, and I cannot perceive any reason why such use of them, while the facts were fresh in his memory, in order to be perfectly accurate as to amounts, would not make the entries in the books original memoranda, available as an artificial memory. Moreover, Messrs. Boyd and Fellows were officers of insurance companies who were underwriters on the same stock, acting in concert, and had been appointed a committee on behalf of all of them, to investigate the loss. This virtually traced the bills into the hands of the defendants’ agents, and authorized the plaintiff to give secondary evidence of their contents if necessary, but, in fact, they were only referred to as memoranda of amounts paid. I think the book was properly admissible in evidence.
The appraisal by Messrs. Douglas and Van Saun was received by the referee as evidence to show the amount of their appraisal, but not as conclusive evidence of the amount of damage, which he explained to mean as being, with the testimony of the appraisers, competent evidence for the plaintiff of the amount of damage, but subject to be contradicted by either party. The policy of insurance in question provided by its ninth condition, that in case of a partial damage to property, after its being put in as good order as the nature of the case will admit, the articles assorted and arranged according to their kinds, and the damaged separated from the undamaged, an inventory should be furnished to the underwriters of the whole, naming the quantity and cost of each article, and that the amount of sound value and damage, should be ascertained by the examination and appraisal of each article by disinterested appraisers mutually agreed upon, and until such appraisal, the loss should not be payable. And such *509 policy also provided that the true cash value of the property should he deemed to be such as it might cost to replace it.
Mr. Boyd, an agent of one of the- insurance companies, (The Unity,) who had insured the premises in question and professing to act for all, and Mr. Fellows as secretary of one, (The Rutgers,) professing to act for others, signed an instrument in writing together with the plaintiff, agreeing that Messrs. Van Saun and Douglas, with a third person to be appointed by them, should appraise and estimate at the true cash value, the damage by fire and water to the property insured, and that the appraisement and estimate of any two of them in writing as to the amount of such damage should be binding on both parties, without reference to any other matters of difference between them.
The evidence of the authority of Messrs. Boyd and Fellows to appoint appraisers of the damage by the fire to the undistroyed goods of the plaintiff, on the trial, appears to me sufficient to make their appraisal binding on the defendants. The acts of their president and secretary were admitted to be binding on them. Notices had been sent on behalf of the plaintiff to all the insurers immediately after the fire, of the loss, and representatives from them collected at the scene of it, including the secretary of the defendants. They informed the agent of the plaintiffs (W. H. DeG-root,) they should appoint a committee to “ settle ” the loss. All of them except one,, (The Montauk,) afterwards had a meeting at the office of one of the companies, (The Unity,) at which the president of the defendants presided and remained until it broke up, and at which a committee, consisting of Messrs. Boyd and Fellows, were appointed ' to investigate the loss, the presiding officer himself putting the question. After the appointment of the appraisers, (Douglas and Van Saun,) by Boyd and Fellows and before any appraisal, and after the plaintiff had submitted his proofs of loss, the representatives of the companies, including the secretary of the defendants again met, and after a report from Messrs. Boyd and Fellows as to the loss and a submission of the plaintiff’s proofs, it was resolved that the *510 plaintiff'should be required to furnish,additional proofs, and the secretary of the defendants, (Rankin,) was substituted on the committee for Mr. Boyd, who was about to go to Europe. Boyd and Fellows superintended the appraisement, after inducing the plaintiff to sign the authority for it, and the defendants paid their share of the compensation of the appraiser appointed by the companies, (Van Saun.) This concert of action among all the underwriters, in which the defendants took such part, considering the obligation of the plaintiff under the policy, to consent to the appointment of joint appraisers of the damage and sound value, before he could recover, particularly as it was not required to be. in writing, was sufficient to constitute Messrs. Douglas and Van Saun appraisers under such condition of the policy, and make their appraisement admissible in evidence. It was not received as conclusive, but of that the defendants could not complain.
How far the evidence introduced to falsify such appraisement should prevail was a matter for the referee to decide. Such appraisers were at liberty to arrive at a conclusion in regard to the valué of the articles they were called upon to estimate, in such way as they thought proper ; they were not bound to the strict judicial investigation of an arbitration. (Elmendorf v. Harris, 5 Wend. 521, and n. p. 522. Garr v. Gomez, 9 id. 649, 661. Harris v. Bradshaw, 18 John. 26. Morton v. Cameron, 3 Rob. 189.) Whether such appraisers fully executed all their powers or not, the plaintiff was not responsible for their short coming in that respect. They did, however, estimate both the sound value and damage, and specified the aggregate of both in their report. The referee may or may not have rejected such estimate as the basis of any computation, as nothing appears either way in his report, and it must be presumed that he found as to that, in such manner as may be necessary to sustain his report. That is a question entirely distinct frbm the admissibility of the appraisal as evidence.
As it thus appears, there was evidence also before the referee of the appointment of Messrs. Boyd and Fellows as a com *511 mittee, after notifying the plaintiffs of such intention by the defendants, to investigate the loss and report; the exceptions taken to inquiries as to their acts were properly overruled. The testimony of the plaintiffs’ agent (W. H. DeGroot) of the notification by such companies, of their intention to appoint such a committee to settle the loss, was important, because he was induced to deal with the committee afterwards on that basis, and it corroborated the evidence of the fact of the defendants having joined in the appointment, which they endeavored to contradict by the testimony of their president' and secretary. Any objection to such testimony was properly overruled, and such overruling seems to have been acquiesced in, as no exception was taken.
From the subsequent interrogatories put to the agent of one of the underwriters, (Pierrepont,) and another of the officers of the same company, (Boyd,) it appeared that the date of a settlement made by such company was material either in fixing the cotemporaneousness, or successiveness of various occurrences, or refreshing their memory in reference thereto. The question put to Pierrepont, as to the date of such settlement, was, therefore, proper. A material question had also been raised as to, whether the plaintiff’s proofs of loss were produced and a demand resolved on for further proofs, at the first or second meeting of the underwriters, and whether Mr. Boyd was still on their committee, when such further proofs were produced. Which Mr. Boyd was enabled to solve, on an examination of him by the counsel for the defendants, by reference to the date of such settlement, whereby the defendants waived their objection to such testimony. (Westlake v. St. Lawrence Co. Mut. Insurance Co., 14 Barb. 206.)
Whatever suspicions the testimony of the fire patrol and fire marshal might raise as to the quantity of goods destroyed, they are set at rest by the finding of the referee, on all the evidence, having been met by the testimony of several employees of the plaintiff, and his proofs of loss which were agreed to be admitted as evidence in chief. It was not impossible that the loss might have been the work of both burglary and *512 incendiarism. Every facility appears to have been afforded by the plaintiff for investigating the nature and extent of the loss, and it is not probable that any new light could be thrown on the controversy by a new trial. The exceptions taken were of a highly technical, if not captious character, and the case seems to have been made with a view of imposing as much labor as possible on the court in investigating it. Questions to which no exceptions were taken, and exceptions of the plaintiff, as well as a great deal of evidence having no bearing on questions raised by the exceptions of the defendants, contrary to the 2d subdivision of the 264th section of the Code of Procedure are introduced, thus increasing the voluminousness of the case, which has no index.
The judgment must, therefore, be affirmed, with costs.